[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 26, 2004
THOMAS K. KAHN
CLERK

No. 03-15270
Non-Argument Calendar

D.C. Docket No. 02-00937-CV-T-MSS

BILLY D. CRAWFORD,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court for the
Middle District of Florida

**(March 26, 2004)**

Before CARNES, HULL and FAY, Circuit Judges.

PER CURIAM:

Billy D. Crawford appeals the district court's order affirming the

Commissioner's denial of his applications for disability insurance benefits and

supplemental social security income, 42 U.S.C. §§ 405(g), 1383(c). On appeal, Crawford argues that the Administrative Law Judge ("ALJ") erred by (1) discrediting the opinions of his treating physicians and chiropractor, and (2) failing to consider consultative psychologist Tracy Hartig's opinion that Crawford had "marked" psychological limitations. For the reasons set forth more fully below, we affirm the district court's order affirming the Commissioner's decision.

Crawford, a 53-year-old male with a ministerial college education, applied for supplemental social security income and disability insurance benefits, alleging an onset date of March 1, 1999, due to bilateral spondylolysis, a posterior midline annular tear, and degenerative disc disease. Crawford's applications were denied initially and on reconsideration. Crawford then requested and received a hearing before an ALJ.

Subsequent to the hearing, the ALJ made findings in a decision that included the relevant medical evidence and witness testimony. The ALJ discredited the opinions of chiropractor Mabbett Reckord and treating physicians Drs. Stanley Zemankiewicz, Pedro Ruiz, and Nicholas Blavatsky, all of whom had classified Crawford as "disabled" or cited functional limitations that would preclude even sedentary work. The ALJ found that the restrictions cited by these

2

physicians "wavered constantly" and were "contradictory to their other conclusions." The ALJ further found that these physicians' notes were inconsistent and detailed only "short-lived problems." Additionally, the ALJ discounted consultative psychologist Tracy Hartig's opinion that Crawford was markedly limited in certain areas, finding that (1) she was not a "treating source" because she had examined Crawford only once, (2) she was not a medical doctor, (3) her findings were based on Crawford's self-interested assertions, and (4) her opinion was inconsistent with treating psychiatrist J. K. Mehta's findings.

The ALJ found that Crawford suffered from the severe impairments of spinal degenerative joint disease and reactive depression and that he consequently lacked the residual functional capacity ("RFC") to perform any of his past relevant work. The ALJ further found, however, that Crawford retained the RFC to perform "a significant range of light work," including work that involved "simple, repetitive, routine, low stress, safe, light work in clean surroundings, with a sit/stand option, and no overhead reaching." Relying on the medical evidence, and testimony from a vocational expert ("VE") and Crawford, the ALJ found that Crawford was not disabled as defined by the Act because he was able to perform other work that existed in significant numbers in the national economy.

3

The Appeals Council denied review of the ALJ's decision. On judicial review, the magistrate judge issued a report recommending that the Commissioner's decision denying benefits be affirmed. Thereafter, the district court entered an order affirming the Commissioner's decision.

On appeal, Crawford argues that the ALJ erred by discrediting the opinions of chiropractor Reckord and Drs. Ruiz, Blavatsky, and Zemankiewicz. Crawford maintains that the opinions of his treating physicians were based on a lengthy treatment history and supported by the medical evidence, whereas the opinion of consulting physician Dr. James Melton, upon which the ALJ placed great weight, was "against the great weight of all the evidence." Additionally, Crawford argues that, although a chiropractor's opinion generally is not entitled to controlling weight, the ALJ should have afforded deference to Reckord's opinion because he had treated Crawford for several years and had referred him to specialists for consultations.

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. "Even if the evidence preponderates against the

4

Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

It is well-established that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis, 125 F.3d at 1440. A treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (good cause existed where the opinion was contradicted by other notations in the physician's own record).

Dr. Ruiz's opinion that Crawford is permanently and totally disabled is inconsistent with his own treatment notes, unsupported by the medical evidence, and appears to be based primarily on Crawford's subjective complaints of pain. Only three weeks after concluding that Crawford was unable to work due to lower back pain, Dr. Ruiz noted that Crawford was "improved" and "doing well" and that he had stated "I'm doing great." Moreover, subsequent to rendering his diagnosis of permanent and total disability, Dr. Ruiz examined Crawford and reported "no acute distress" Further testing by Dr. Ruiz revealed no musculoskeletal abnormalities. Additionally, medical tests that were conducted by physicians to whom Dr. Ruiz had referred Crawford revealed "no evidence of

5

fracture, dislocation or bony destruction," normal soft tissues, and "[n]o evidence of metastatic disease." Based on the foregoing, and the fact that Crawford repeatedly had declined medication that Dr. Ruiz had prescribed him, the ALJ's decision to discount Dr. Ruiz's opinion was supported by substantial evidence. See Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (failure to follow prescribed medical treatment will preclude a finding of disability).

Additionally, substantial evidence supports the ALJ's determination that Dr. Zemankiewicz's findings did not establish that Crawford was disabled within the meaning of the Act. The medical record indicates that Dr. Zemankiewicz found Crawford to be disabled for only a nine-day period. To the extent that Crawford asserts that Dr. Zemankiewicz's findings warrant a finding of total and permanent disability, he is not entitled to relief because such a finding is inconsistent with Dr. Zemankiewicz's treatment notes. During his first examination of Crawford, Dr. Zemankiewicz prescribed a "back program for exercise" and prohibited Crawford from lifting more than 25 pounds. A subsequent MRI revealed "[v]ery minimal degenerative disc disease . . . [n]o bulge or protrusion . . . [n]o canal stenosis or nerve root impingement." Finally, Dr. Zemankiewicz noted in an addendum that a repeat examination of the MRI revealed "no associated spondylolisthesis,

significant neural foramen narrowing, or spinal stenosis" and "no canal compromise."

Next, Dr. Blavatsky's conclusory finding that Crawford was disabled is unsupported by the medical evidence and contradicted by his own treatment notes, which state that (1) Crawford's MRI and bone scan were negative, (2) there was "no evidence of fiscal incarceration, protrusion, bony destructive process, alignment, intrinsic or neural abnormality," (3) x-rays revealed "no evidence of spondylolisthesis" and "good preservation of lumbar lordosis," and (4) "[f]lexion and extensive views done on this occasion demonstrate no evidence of spondylolisthesis or segmental instability." Additionally, less than two weeks after making a finding of disability, Dr. Blavatsky noted that Crawford's nerve conduction studies were negative. Based on the foregoing, the ALJ's decision to discount Dr. Blavatsky's opinion was supported by substantial evidence.

Next, the ALJ's decision to discount chiropractor Reckford's opinion was supported by substantial evidence for two reasons. First, Reckford is not considered an "acceptable source" and, thus, his opinion cannot establish the existence of an impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding chiropractors from the list of "acceptable medical sources" whose opinions may be considered in determining the existence of an impairment). Second, Reckford's

findings of disability are inconsistent with his own treatment notes and unsupported by the medical evidence. Reckford's finding that Crawford was unable to return to his past relevant work as a truck driver was based solely on Crawford's subjective complaints of pain. Additionally, approximately two weeks after making his finding, Reckford reported "an immediate 50% reduction in the amount of pain, spasm and limited motion" and noted that Crawford "always feels better with completion of chiropractic treatment." Finally, approximately five weeks after indicating that Crawford could perform no carrying, lifting, standing, sitting, climbing, balancing, stooping, crouching, kneeling, or crawling, Reckford reported that Crawford baby-sits his grandchildren and helps his wife and children around the house.

Additionally, Crawford's contention that Dr. Melton's opinion was "against the great weight of all the evidence" lacks merit. Dr. Melton's opinion that Crawford should not return to work that involves lifting more than 20 to 25 pounds, or frequent lifting in excess of 15 pounds, is consistent with the above-mentioned medical evidence and comports with Dr. Zemankiewicz's finding that Crawford should be restricted from lifting more than 25 pounds.

Finally, Crawford argues that the ALJ erred by failing to consider Hartig's opinion that he had "marked" psychological limitations. Crawford maintains that

8

the ALJ had no basis for rejecting Hartig's opinion and, thus, erred by failing to include her findings in the hypothetical question to the VE. Crawford additionally contends that the district court erred by "failing to justify the ALJ's implicit rejection of the 'marked' limitations noted [by Dr. Hartig]."

Crawford's contention that the ALJ ignored Hartig's findings is belied by the record. The ALJ expressly considered Hartig's opinion that Crawford was markedly limited in terms of his ability to cope with change or stress. However, the ALJ found that Hartig's opinion was not entitled to controlling weight and that, based on treating psychiatrist Dr. Mehta's reports, Crawford could perform "limited, simple, low-stress, routine work requiring moderate concentration."

The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician"). Moreover, the ALJ's findings regarding Crawford's mental capacity were supported by the findings of Dr. Mehta, the psychiatrist who had examined Crawford on two occasions and reported that Crawford was "cooperative . . . clear, spontaneous, but without any evidence of loose associations, flights of ideas, or pressure of speech." Additionally, Dr. Mehta stated that Crawford had described

his mood as "feeling better" and that he should attend vocational rehabilitation to ascertain whether he can learn skills that will enable him to perform gainful employment. Based on the foregoing, Crawford is not entitled to relief on this claim.

Additionally, Crawford's contention that the district court failed to address the ALJ's implicit rejection of Hartig's opinion is belied by the record. The district court expressly found that the ALJ had properly considered Hartig and Dr. Mehta's reports and that the ALJ's decision on the issue of Crawford's mental limitations was supported by substantial evidence. Moreover, Crawford cannot show that he was prejudiced by the court's alleged error because the ALJ's decision was supported by substantial evidence, as discussed above.

Finally, we need not address Crawford's contention that the ALJ's hypothetical question to the VE was inadequate because Crawford failed to raise this issue in the district court. See Stewart v. Dept. of Health and Human Services, 26 F.3d 115, 115-16 (11th Cir. 1994) (stating that "[a]s a general principle, this Court will not address an argument that has not been raised in the district court"). In any event, the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.

Accordingly, we conclude that substantial evidence supports the ALJ's decision to discredit the opinions of Crawford's treating physicians and chiropractor. We further conclude that substantial evidence supports the ALJ's findings regarding Crawford's mental RFC. We, therefore, affirm.

**AFFIRMED.**